Gary D. LESTER *v.* MOUNT VERNON-ENOLA
SCHOOL DISTRICT

95-873                                          917 S.W.2d 540

Supreme Court of Arkansas
Opinion delivered March 18, 1996

*Roachell Law Firm*, by: *Travis N. Creed*, for appellant.

*Brazil, Adlong, Murphy & Osment*, by: *William C. Brazil*
and *Amy Brazil*, for appellee.

DAVID NEWBERN, Justice. This is a Teacher Fair Dismissal Act case. The Act is found at Ark. Code Ann. §§ 6-17-1501 through 6-17-1510 (Repl. 1993). Garry Lester appeals the decision of the Faulkner County Circuit Court which affirmed the decision of the Mount Vernon-Enola School Board (the Board) to terminate his teaching contract. Mr. Lester contends the Board's hearing in response to his request to review the Superintendent's termination recommendation was not held within the time period prescribed by the Act. Mr. Lester made additional arguments, but as we agree with his point on the timing of the hearing, we need not address them. We reverse and remand the case for further proceedings.

The incident which led to Mr. Lester's termination occurred on Friday, August 26, 1994. It involved the use of inappropriate language by Mr. Lester during a homeroom class period he supervised.

During the weekend following the incident, Mr. Lester learned that parents of students who had been present during his admitted indiscretion and the superintendent, Mr. Bakker, did not approve of his conduct. On Friday night, a parent confronted Mr. Lester and expressed his displeasure with the language that was used during his child's homeroom class. Then, on Sunday night, Mr. Lester received a call from Mr. Bakker, who informed him he was not to report for his bus driving or for teaching duties. Mr. Bakker also told Mr. Lester to report to his office on Monday.

Mr. Lester met with Mr. Bakker and Mr. Guffy, the principal of the high school on Monday, August 29, 1994. He was informed of the complaints received from parents concerning the "joke" he told, and that as a result, they were going to recommend the termination of his contract to Board. On September 2, 1994, Mr. Lester received the following written notice from Mr. Bakker:

> You are hereby notified that you are suspended with pay, effective immediately and that I intend to recommend that your contract with the Mount Vernon-Enola School District be terminated. The reasons for my recommendation are as follows: The use of inappropriate language to teenage female students.

> You have the right to a hearing on this recommendation before the school board. If you desire a hearing, you must make a request for same, in writing to may office, within thirty days of your receipt of this letter. The hearing will be held at the next regular school board meeting following the receipt of your request for a hearing, unless a later date is agreed to in writing.
>
> If you request a hearing, you have the right to be represented by the person of your choice, and if you so request in writing, a record of the hearing will be preserved and a transcript will be provided to you at no cost.

After receiving the written notice from Mr. Bakker, Mr. Lester talked with each of the five members of the Board to ascertain how each would vote on Mr. Bakker's recommendation. Mr. Lester believed at least three would vote against termination. Mr. Lester testified that the President of the Board, Owen Leach, recommended that in light of the three favorable votes, the hearing should take place as soon as possible so Mr. Lester could get back to the classroom.

Mr. Lester sought the advice of his brother, Bobby Lester, Superintendent of the Pulaski County Special School District. Bobby Lester testified he told his brother he should hire an attorney and take the issue to the Board. Bobby Lester also advised his brother to wait the full 30 days allowed by the Act before requesting a hearing, as that would allow time to continue receiving pay and to attempt to resolve differences with the parents of his students.

Despite Bobby Lester's advice, on September 4, 1994, Garry Lester hand-delivered a letter to the Board in which he requested a hearing before the Board "as soon as possible."

On September 8, 1994, four days after Mr. Lester gave notice that he wanted a hearing, a special meeting of the Board was called for a hearing on Mr. Bakker's recommendation. The Act requires that any such hearing "shall take place not less than five (5) days nor more than ten (10) days after the written request has been served on the board, except that the teacher and the board may, in writing, agree to a postponement of the hearing to a later date:. . ." § 6-17-1509(c)(1). The Board voted 3-2

to uphold Mr. Bakker's recommendation. Mr. Lester appealed to the Circuit Court where he argued that the action of the Board violated the law because the hearing was held too early.

In affirming the Board's decision, the Court recited the following conclusion, among others:

> 5. Plaintiff waived his right to strict compliance for a hearing to be held not less than 5 (five) nor more than 10 (ten) days when he requested the hearing to be held as soon as possible. No objection was made and the Plaintiff was not prejudiced by the action of the district. .

■ Mr. Lester correctly argues that since 1989 the General Assembly has required strict compliance with the Teacher Fair Dismissal Act. Holding the hearing fewer than five days after his request was submitted constituted failure to comply strictly with § 6-17-1509(c)(1).

Prior to 1989, we recognized that "substantial compliance" with the Act was sufficient. *See Murray* v. *Alteimer-Sherrill Public Schools*, 294 Ark. 403, 743 S.W.2d 789 (1988). In 1989, however, the General Assembly enacted Act 625, which amended the Act and added this sentence to § 6-17-1503:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district strictly complies with all provisions of this subchapter and the school district's applicable personnel policies.

*See also Western Grove School District* v. *Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994).

Mr. Lester contends that, by finding that he waived the statutory time period by requesting a hearing "as soon as possible," and by finding that he was not prejudiced by the timing of the hearing, the Trial Court engaged in a substantial compliance analysis, which contravenes the intent of the General Assembly. In addition to citing Mr. Lester's letter, the Board notes that Mr. Lester made no objection to the timing of the hearing.

■ In other contexts in which the General Assembly has stated a strict compliance requirement it has been held that such compliance may be waived. *Davlin* v. *State*, 313 Ark. 218, 853

S.W.2d 882 (1993); *Winters* v. *Lewis,* 260 Ark. 563, 542 S.W.2d 746 (1976). The question here, however, is whether waiver occurred. The evidence does not support the Trial Court's finding of waiver of the minimum (5-day) period between request and hearing.

In every case of which we are aware, we have held that a waiver of a right requires knowledge of that right on the part of the party alleged to have waived it. In *Bethell* v. *Bethell,* 268 Ark. 409, 597 S.W.2d 576 (1980), we quoted from *Continental Ins. Cos.* v. *Stanley,* 263 Ark. 638, 569 S.W.2d 653 (1978), our standard statement on the subject as follows:

> Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely on that right. . . . The relinquishment of the right must be intentional. . . .

That case involved waiver of the right to alimony by failure to request it. Other cases in which we have uttered the same or similar language in various contexts include, *Ingram* v. *Wirt,* 314 Ark. 553, 864 S.W.2d 237 (1993); *Worth* v. *Civil Service Comm'n,* 294 Ark. 643, 746 S.W.2d 346 (1988); and *Mobley* v. *Estate of Parker,* 278 Ark. 37, 642 S.W.2d 883 (1982).

While there is evidence that Mr. Lester knew of some, if not most, of his rights under the Act, we have carefully combed the record for any evidence that he was aware of his right to have the hearing no fewer than five days after his request. We found no such evidence.

We might speculate that Mr. Lester would have wanted the hearing held as soon as possible even if he had been aware of his right to have it no fewer than five days after his request. A holding to that effect or a holding that the Trial Court's finding that there was a waiver implied the necessary knowledge would, however, completely evade the issue and subvert the General Assembly's strict compliance requirement and obvious intention that a "cooling off" period occur in these cases. It would also mock our earlier decisions requiring evidence of

knowledge as a predicate for waiver. The same would be true if we based affirmance on the failure of Mr. Lester to object to violation of a rule of which there is no evidence he was aware. Absent evidence of the requisite knowledge on Garry Lester's part of the right purportedly waived, we cannot, in accordance with our precedent, hold that he waived it.

We remand the case to the Trial Court for entry of an order consistent with this opinion.

Reversed and remanded.