2012 Ark. App. 271

DELTIC TIMBER CORPORATION
& Griffen Land Services, Inc.,
Appellants

v.

Kathy Sue NEWLAND, Danny Newland,
Karen Ann Newland, Randy Newland,
and Lisa Kay Dillard, Appellees.

No. CA 11–1042.

Court of Appeals of Arkansas.

April 18, 2012.

Jerry L. Canfield and Thomas A. Daily, Daily & Woods, P.L.L.C., Fort Smith, for Appellant.

M. Edward Morgan, Morgan Law Firm, P.A., Clinton, for Appellees.

DAVID M. GLOVER, Judge.

The issue in this case is who owns a 3/8 interest in all oil, gas, and mineral rights in property in Conway County. On December 28, 1983, David L. Baker and Carolyn M. Baker executed a warranty deed to William P. Batson and Garna Sue Batson. This deed, filed of record the following day, conveyed real property, subject to a reservation by the Bakers, which provided:

GRANTORS HEREIN RESERVE AN UNDIVIDED 3/8 INTEREST IN AND TO ALL OIL, GAS AND MINERALS LYING IN, ON AND UNDER THE HEREIN ABOVE DESCRIBED LANDS, WITH THE RIGHT TO ENTER AND MINE SAID OIL, GAS AND MINERALS FOR A PERIOD OF 20 YEARS FROM THE DATE HEREOF, AT WHICH TIME THE UNDIVIDED 3/8 INTEREST RESERVED HEREIN SHALL REVERT TO GRANTEES HEREIN.

On April 2, 1984, the Batsons executed a warranty deed to appellant, Deltic Farm and Timber Co., Inc., conveying the same property to Deltic and "[e]xcepting all prior, valid |₂reservations and/or conveyances of record of oil, gas, and other minerals in and under the subject land."

On October 30, 1984, the Batsons executed a mineral deed to their three daughters, Kathy Sue Newland, Karen Ann Newland, and Lisa Kay Dillard, appellees herein. This deed was filed of record on November 5, 1984. In this deed, the Batsons conveyed to each of the appellees "an undivided one-third interest, as tenants in common, and unto their heirs and assigns forever, our interest and all of our undivided 3/8 interest which shall revert to us in the year 2003, in and to all oil, gas and other minerals lying in, on or under the [land in question]."

In August 2008, appellees commenced an action seeking a declaratory judgment that they owned the 3/8 mineral interest. Both parties filed motions for summary judgment, and the trial court granted appellees' motion for summary judgment. Deltic appealed to our court. We found that the deed from Batson to Deltic was ambiguous and reversed and remanded to the trial court. In arriving at this decision, our court held:

When interpreting a deed, the court gives primary consideration to the intent of the grantor. *Bishop v. City of Fayetteville*, 81 Ark.App. 1, 97 S.W.3d 913 (2003). When the court is called upon to construe a deed, it will examine the deed from its four corners for the purpose of ascertaining that intent from the language employed. *Id.* The court will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when the language of the deed is ambiguous, uncertain, or doubtful. *Id.* When a deed is ambiguous, the court must put itself as nearly as possible in the position of the parties to the deed, particularly the grantor, and interpret the language in the light of attendant circumstances. *Id.*

The initial determination of the existence of an ambiguity rests with the court, and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the fact-finder. *C. & A. Constr. Co., Inc. v. Benning Constr.* |₃*Co.*, 256 Ark. 621, 622, 509 S.W.2d 302, 303 (1974). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Magic Touch Corp. v. Hicks*, 99 Ark.App. 334, 260 S.W.3d 322 (2007). *We hold that the Batson–Deltic deed is ambiguous. The Batsons clearly intended to retain some interest, as there is no other reason to include an "excepting" clause, but what they wanted to retain is unclear from the face of the deed.* If one follows the "excepting" clause to its ultimate conclusion, the deed excepted the five-eighths mineral interest, the three-eighths mineral interest, and even the surface because all were "prior, valid conveyances." By not distinguishing between the five-eighths mineral interest and the three-eighths mineral interest, the deed

leaves us with serious doubt about what exception is created. Once again the use of "and/or" serves to confuse, not clarify the task of construing the document at hand. *See Heath v. Westark Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 953 (1976) ("The phrase 'and/or' has brought more confusion than clarity to the task of construction of statutes, contracts and pleadings."); *Boren v. Qualls*, 284 Ark. 65, 680 S.W.2d 82 (1984) (calling "and/or" an imprecise term and noting that it had previously been labeled "a linguistic abomination"). We disagree with appellant's contention that the deed *clearly* excepts only the twenty-year reservation held by the Bakers; we also disagree with appellees' contention that "[i]f the exception in the Batson–Deltic deed was sufficiently clear to include the 20 year term interest, it must also include the reversionary interest springing from the same reservation." We acknowledge appellant's argument that the clause at issue in the Batson–Deltic deed fails for lack of certainty. We fundamentally disagree with appellant, however, that the "excepting" clause should simply fail based on its ambiguity. [fn3] Nor do we agree with appellees that the general exception language in the deed is sufficiently clear to include the remainder interest created by the Baker–Batson deed.

Summary judgment was premature in this case because there is clearly a factual dispute as to the intention of the parties. Because we find that the "excepting" clause in the Batson–Deltic deed is ambiguous, the fact-finder can consider extrinsic proof of intent in construing the deed and the court may rely on the rules of construction previously set forth by our supreme court. The determination of the intent of a grantor is largely a factual one. *Winningham v. Harris,* 64 Ark.App. 239, 243, 981 S.W.2d 540, 542 (1998). When issuing its order, the trial court had before it the warranty mineral deed from the Batsons granting their three children "our interest and all our undivided 3/8 interest which shall revert to us in the year 2003, in and to all oil, gas and other minerals lying in, on or under the following lands in Conway County, Arkansas." This presented some evidence, several months after the Batson–Deltic deed was executed, that the Batsons believed they owned the three-eighths mineral interest that appellant now claims.

We note that, in arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous contract or deed by the parties themselves, evidenced by subsequent statements, acts, and conduct. *Wynn v. Sklar & Phillips Oil Co.*, 254 Ark. 332, 341, 493 S.W.2d 439, 445 (1973). Courts may also acquaint themselves with and consider circumstances existing at the time of the execution of a contract and the situation of the parties who made it. *Id.* These are precisely the kinds of facts that need further development upon remand because the intention of the parties is not apparent without the introduction of extrinsic evidence. Further, as a rule of last resort, an ambiguous deed is construed most strongly against the party who prepared it, *see Gibson v. Pickett*, 256 Ark. 1035, 512 S.W.2d 532 (1974), or against the grantor. *Goodwin v. Lofton*, 10 Ark.App. 205, 662 S.W.2d 215 (1984). The circuit court had no evidence before it to determine whether the grantors or the grantee prepared the deed in question, but the identity of the grantors is evident. Whether the circuit court should get to this rule of construction will be dependent on the parol or extrinsic evidence introduced by

the parties in an effort to determine the intention of the grantors and grantee. *Deltic Timber Corp. v. Newland,* 2010 Ark. App. 276, at 7–11, 374 S.W.3d 261, 266–68 (emphasis added) (*Deltic I* ).

Upon remand, the trial court took testimony and made a determination that Deltic was aware that only 5/8 of the minerals were to be conveyed, as evidenced by its own February 13, 1984 Land Acquisition Report; that although Deltic presented testimony that its policy in 1984 was to acquire all of the minerals with any tract of land purchased, there was no evidence that it would not purchase a tract of land unless all of the mineral rights conveyed; that an internal Deltic memo indicated that the Batsons were "to convey an undivided 5/8 interest in all oil, gas, and other minerals"; that Mr. Batson's testimony that he intended to reserve a 3/8 mineral interest when he sold the property to Deltic was credible; and that the conveyance to appellees six months after the sale to Deltic, at a time when there was no dispute over the mineral rights involved in the litigation, was further evidence of the Batsons' intent to reserve a 3/8 mineral interest at the time of the execution of the deed to Deltic. The trial court found that it was not necessary to resort to the rules of construction, as it made a finding as to the intent of the parties to the Batson–Deltic deed at the time of its execution as directed by this court, but even if it had to resort to the rules of construction, it would have to resolve any ambiguity against Deltic as the party that drafted the deed. The trial court found that, based upon its findings, the October 30, 1984 deed from William Batson and Garna Sue Batson to appellees vested in appellees an undivided 3/8 mineral interest in the property.

Deltic again appeals to our court, arguing (1) that our court's prior determination that the deed's exception language is am-

biguous is erroneous and is inconsistent with a later holding of our court; (2) that the trial court erroneously excluded significant portions of a witness's testimony; and (3) that the circuit court erroneously determined that the testimony and exhibits introduced at trial were sufficient to establish the parties' mutual intent for appellees' parents to retain the remainder interest in 3/8 of the minerals. We affirm the trial court in all respects.

### Prior Determination of Ambiguity Erroneous and Inconsistent

Deltic's first argument on appeal is that our court's prior determination that the deed's exception language was ambiguous is erroneous and inconsistent with the holding in *Burgess v. Lewis,* 2011 Ark. App. 362, 2011 WL 1795523. In that case, our court found that the language in the deed, as it appeared from the four corners of the instrument, was not ambiguous. We need not determine if our holding in *Deltic I* was incorrect because it is now law of the case and cannot be revisited on this appeal. In *Green v. George's Farms, Inc.,* 2011 Ark. 70, at 7–8, 378 S.W.3d 715, 720–21, our supreme court held:

> The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Cadillac Cowboy, Inc. v. Jackson,* 347 Ark. 963, 69 S.W.3d 383 (2002). The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Clemmons v. Office of Child Support Enforcement,* 345 Ark. 330, 47 S.W.3d 227 (2001). The law-of-the-case doctrine also prevents consideration of an argument that could have been raised at the first appeal and is not made until a subsequent appeal. *First Commercial Bank v. Walker,* 333

Ark. 100, 969 S.W.2d 146 (1998). The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Jones v. Double "D" Props., Inc.,* 357 Ark. 148, 161 S.W.3d 839 (2004).

Deltic argues that when our court reversed and remanded the trial court's grant of summary judgment to appellees in *Deltic I,* all issues were "opened anew." We disagree. Our holding in *Deltic I* was that the deed was ambiguous. We reversed and remanded the case to the trial court to resolve the ambiguity, which it has now done. We cannot now go behind our holding in *Deltic I* and say that the deed was not ambiguous, as the law-of-the-case doctrine prevents us from revisiting our decision in *Deltic I* in this subsequent appeal. Our court is bound by our decision in *Deltic I* that the language in the Batson–Deltic deed was ambiguous.

### Exclusion of Witness Testimony

Evidentiary rulings are reviewed for an abuse of discretion. *Green v. Alpharma, Inc.,* 373 Ark. 378, 284 S.W.3d 29 (2008). A trial court abuses its discretion when it improvidently exercises its discretion thoughtlessly and without due consideration. *Poff v. Brown,* 374 Ark. 453, 288 S.W.3d 620 (2008).

On remand to determine the intent of the parties, Deltic called Larry Graddy, an attorney in Conway, Arkansas, who also owns a land-title company. Graddy was not involved in the preparation of the Batson–Deltic deed but did prepare the deed from the Batsons to their daughters conveying the 3/8 mineral interest in October 1984. Graddy testified that based upon his experience as a title examiner, it was his opinion that the exception language should appear in every warranty deed. Deltic's attorney then asked Graddy what the standard real-estate practice with reference to the use of such an exception clause was concerning a prior mineral reservation; appellees' attorney objected on the basis that it would be a legal opinion because Graddy would have to interpret the instrument. The trial court sustained the objection on the basis that, because the instrument had to be interpreted, that called for a legal conclusion. Deltic then offered Graddy's proffered testimony that the use of the exception clause is an appropriate real-estate practice; that it is important for the purpose of limiting the warranty; that it is standard real-estate practice to include that type of excepting clause in order to deal with the warranty; that the excepting clause itself does not constitute a reservation of any new interest not previously expressed and recorded; and that the excepting clause contained in the Batson–Deltic deed was essentially the same excepting clause that he used in his real-estate practice. Deltic's attorney then asked Graddy if his use of the excepting clause was for the purpose of protecting the grantor's warranty from breach; appellees' attorney again objected on the basis that called for a legal conclusion. The trial court sustained the objection but allowed Deltic to proffer Graddy's affirmative answer.

Deltic argues that Graddy's excluded testimony is exactly what is missing from this court's erroneous conclusion in *Deltic I* that "there is no other reason to include an exception clause." 2010 Ark. App. 276, at 8, 374 S.W.3d at 266–67. Our supreme court has taken a dim view of attorneys offering legal opinions regarding the ultimate legal issues of a case. *See Williams v. First Unum Life Ins. Co.,* 358 Ark. 224, 188 S.W.3d 908 (2004); *Byrd v. Dark,* 322 Ark. 640, 911 S.W.2d 572 (1995). Deltic

acknowledges in its brief that an attorney is not ordinarily permitted to testify as to the issues of law in a case, but it argues that Graddy's testimony was not what the exception language meant, but rather that such language was commonly used, was "virtually mandatory," and the reason why it was common and mandatory. Deltic argues that in *Burgess, supra,* our court accepted and affirmed a trial court's ruling, which relied upon very similar testimony in an affidavit filed in support of the appellees' motion for summary judgment, that reached the "identical conclusion" proffered by Graddy. However, in *Burgess,* it does not appear that the affidavit drew an objection from the appellants as Graddy's testimony did in the present case.

Furthermore, the testimony from Graddy, which Deltic now claims is crucial, appears to have been admitted in James Baine's testimony, *see infra* the discussion of sufficiency of the evidence. We cannot say that the trial court abused its discretion in refusing to allow the portions of Graddy's testimony challenged by appellees.

### Sufficiency of Evidence to Support Decision of Trial Court

In a bench trial of a civil action, the standard of review is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Seidenstricker Farms v. Doss,* 372 Ark. 72, 270 S.W.3d 842 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the finder of fact. *Id.*

Deltic argues that the testimony and exhibits introduced at trial were insufficient to establish the parties' mutual intent for the Batsons to retain the 3/8 remainder interest in the minerals. Deltic again argues that our court erred in remanding this matter for trial to determine the subjective intent of the parties when the Batson–Deltic deed was executed; however, for the reasons discussed above, that issue will not be revisited.

We agree with Deltic that attempting to discern intent twenty-seven years after the execution of the deed is somewhat difficult. Deltic's land manager at the time of the execution of the deed is deceased, and the real-estate agent who represented the Batsons in the transaction was not located. However, there was testimony given about the events surrounding the execution of the Batson–Deltic deed. Mr. Batson testified at the hearing that he had a deed prepared for the transaction and submitted to his real-estate agent that stated, "Grantor herein conveys 5/8 interest in to all minerals, with the right of ingress and egress." However, this deed was not used in the transaction; another deed, prepared by Murphy Oil (of which Deltic was a wholly owned subsidiary at the time of the transaction), was used. Batson testified that, at the time the transaction was closed, it was his intention for his daughters to have the 3/8 mineral rights and for Deltic to have 5/8 of the minerals. Batson stated that he was unable to recall the "fine details" of the transaction, and he had no recollection of any conversation with any attorney, real-estate agent, or Deltic representative about the reason for the change in the language of the deed he submitted and why that deed was not used.

James Baine, a former Murphy Oil Corporation employee, testified that at the time of the transaction, it was Deltic's

policy to acquire almost all of the minerals if possible so that it could have control over the land. Baine stated that Sue Dunn, now deceased, was the head of the land department at Deltic at the time of the execution of the deed in question; that she was meticulous; and that she would not have changed the transaction without making sure that Mr. Batson or the realtor knew that he was not going to retain a 3/8 interest in the minerals. Baine testified that Deltic rejected the first deed because the granting clause stated that everything was being conveyed but another clause stated that only a 5/8 interest in the minerals was being conveyed, and Deltic's policy was to obtain everything. Baine said that he rendered a title opinion on the property prior to closing; that it was Deltic's intent to get all of Batson's interest; that the deed used contained a warranty clause and an excepting clause; that Deltic's intent in using the excepting clause was to protect the grantor from the warranty clause and also to provide that, at the end of the delay period, Deltic would acquire the mineral interest; and that there was nothing unusual about the excepting language used, as it was a standard clause used by Deltic.

On cross-examination, Baine admitted that the land-acquisition paper and the offer and acceptance both stated that 5/8 of the minerals were being conveyed, but he said that the terms in those documents were based upon false information. He testified that in his title opinion, he pointed out that the Bakers owned an undivided 3/8 mineral interest in the property for twenty years. Baine said that he did not comment on the 3/8 interest in his title opinion, nor did he speak to Ms. Dunn about what action should be taken as far as the 3/8 interest was concerned because it was not necessary for the title opinion. Baine again reiterated that the original deed prepared by Batson would not have

protected the Batsons, and that the deed that was eventually executed would protect the Batsons and also grant Deltic the additional 3/8 mineral interest at the end of the time period per Deltic's policy. Baine stated that the offer and acceptance showed that 5/8 of the minerals were being conveyed, but that did not mean that only 5/8 of the minerals were conveyed because there was no reservation or exception. Baine acknowledged that there was a memo in the file from Ms. Dunn to an E.T. May questioning whether the 3/8 interest would revert to Deltic or to the Batsons. Baine interpreted that memo to indicate that Ms. Dunn wanted legal help with reference on how to book when the twenty-year interest would come to Deltic.

If a clause is ambiguous, the trial court "must put [itself] as nearly as possible in the position of the parties to the deed (particularly the grantor) and interpret the language in the light of attendant circumstances." *Gibson v. Pickett*, 256 Ark. 1035, 1041, 512 S.W.2d 532, 536 (1974). After the hearing, the trial court issued an order in which it found that the offer to purchase stated that "5/8ths of the minerals to be coyeded [sic]," which the trial court found to clearly indicate that 5/8 of the minerals would be conveyed in the transaction, and that Deltic was aware that only 5/8 of the minerals were to be conveyed as evidenced by the land acquisition report of February 13, 1984, when it prepared the offer to purchase on that date. The trial court further found that, although Deltic presented testimony that its policy in 1984 was to acquire all of the minerals with any tract of land purchased, there was no testimony that it would not purchase land that did not convey all of the minerals or that the Batson transaction would not have taken place without Deltic obtaining all of the mineral interests. The trial court found Batson's testi-

mony that he intended to reserve a 3/8 mineral interest at the time he sold the property to Deltic to be credible, and the fact that Batson conveyed the 3/8 mineral interest to his daughters only six months after the sale of the property to Deltic, when there was no dispute over the mineral interest, was further evidence to the trial court of Batson's intent to reserve a 3/8 mineral interest at the time of the execution of the Batson–Deltic deed. The trial court found that, having ascertained the intent of the parties to the Batson–Deltic deed at the time of its execution, it was not necessary to resort to the rules of construction.

We cannot say that the trial court's findings are clearly erroneous. The trial court did exactly what our court told it to do after we found the deed to be ambiguous— the trial court developed the facts and determined the parties' intent. Deltic argues that the evidence in this record merely supports a choice of possibilities; however, Deltic ignores the fact that, after hearing the evidence, the trial court made credibility determinations in favor of appellees, and our court must respect those credibility decisions. Deltic argues that "it is impossible not to believe that they [Ms. Dunn and real-estate agent] had some conversation concerning the difference between the two deed forms [Batson's original proffered deed and the deed ultimately used] and resolved the matter in favor of the [Batson–Deltic deed]." There is simply no evidence of this conversation that Deltic insists must have occurred; to accept this argument would be rank speculation on the part of our court as well as ignoring the trial court's determinations regarding credibility, which we will not do.

Affirmed.

HART and GRUBER, JJ., agree.